## DETROIT TRUST CO. *v.* GLAZIER STOVE CO.

SALES—EFFECT—PASSING TITLE—EVIDENCE—SUFFICIENCY.

On a petition to recover possession from a receiver of a switchboard manufactured and installed by intervener in defendant's plant, evidence examined, and *held,* that intervener's view that the title had not passed because of lack of acceptance by defendant only presented itself after defendant became insolvent, and that a complete sale and delivery, including passing of title to the property, was shown.

Appeal from Washtenaw; Kinne, J. Submitted November 16, 1908. (Docket No. 70.) Decided December 14, 1908.

Bill by the Detroit Trust Company, trustee, against the Glazier Stove Company for the appointment of a receiver. The F. Bissell Company intervened claiming the right of possession of certain property sold to defendant. From an order denying the claim of the intervener, it appeals. Affirmed.

*Orla B. Taylor* and *Charles F. Delbridge,* for complainant.

*Holbrook & Monsarrat* and *Blum & Sample,* for appellant.

BROOKE, J. On April 10, 1907, in consideration of $1,220, the F. Bissell Company made a written agreement with the Glazier Stove Company to furnish all labor and material for a switchboard complete in every detail, and for installing same in the company's plant at Chelsea, Mich., in accordance with certain specifications. The switchboard consisted of five marble panels 72″x24″x2″. The contract is evidenced by the following correspondence:

155 MICH.—6.

"4-10-07.

"CHAS. L. WEIL & CO.,
          "616 Union Trust Bldg.,
                    "Detroit, Mich.
     "*Gentlemen:* We received this morning specifications for Glazier Stove Co. switchboard and have this p. m. wired you as per the inclosed confirmation. * * * The F. Bissell Company propose to furnish all labor and material called for by the specifications (set No. ———, dated ———) for a switchboard for the power house of the Glazier Stove Company at Chelsea, Michigan, and in entire accordance with said specifications for the sum of twelve hundred and twenty dollars ($1,220).
          [Signed]          "THE F. BISSELL COMPANY."

                              "May 28, 1907.

"F. BISSELL CO.,
          "Toledo, Ohio.
     "*Gentlemen:* We have been instructed by the Glazier Stove Company to accept your proposal of May 28, 1907, for switchboard.   Price $1,220.   Delivery of the board to be made within six to seven weeks.   All labor and material to be in accordance with our specifications.
               "Yours truly,
                    "CHAS. L. WEIL & CO.,
                         "Per CHAS. L. WEIL."

In pursuance of this contract the claimant furnished all the necessary labor and material, and installed and erected a switchboard in the power building of the Glazier Stove Company.   Upon its completion at Toledo it was shipped to the Glazier Stove Company at Chelsea, Mich., and a bill rendered to said company for the same, amounting to $1,224.40.   This bill, aside from the $1,220, the original contract price, included $4.40 for some extra attachments. The switchboard went into service on August 22, 1907, and has ever since been used by the Glazier Stove Company or its receivers.   Chas. L. Weil & Co. were the erecting engineers for the Glazier Stove Company, and on August 6, 1907, notified the Glazier Stove Company as follows :

"*Gentlemen:* The arrangement of certain switches and circuit breakers on the switchboard sold you by the

F. Bissell Company is not that called for by the contract. We would specifically request that you do not make a payment on this switchboard without our approval.

"Yours truly,
"Chas. L. Weil & Co.,
"Per Chas. L. Weil."

Correspondence between the Chas. L. Weil & Co. and the F. Bissell Company ensued relative to the changed arrangement of the circuit breakers and switches. On August 12th the Chas. L. Weil & Co. wrote the F. Bissell Company as follows:

"We cannot approve of the panels in question."

On September 2d, the Bissell Company sent to the Glazier Stove Company a statement of account including the item for the switchboard, and made sight draft therefor. On September 3d, the Glazier Stove Company replied to the claimant stating that these matters were held subject to the advice of Messrs. Weil & Co. On September 9th, the F. Bissell Company wrote Chas. L. Weil & Co. as follows:

"There is of course no question in reference to our having changed the position of the switches and circuit breakers of the feeder panel from that indicated on the blue print, but we had sufficient advantageous reasons for doing so. In this our opinions evidently differ. It would seem to us unnecessary expense to furnish new panels or to redrill the old panels to make the arrangement as per blue print, but, as we alone are responsible for the error, we are prepared to do this or make other adjustment of the matter which you may demand."

On September 14th, Chas. L. Weil & Co. wrote the F. Bissell Company as follows:

"We suggest that you either furnish new panels at this time, for the switchboard in question, or make the Glazier Stove Co. sufficient allowance on the invoice to cover the expense of making this alteration at a future date."

On September 25th, Mr. Bardol, treasurer of the F. Bissell Company, wrote the Glazier Stove Company as follows:

"Your attention is called to past due account, consisting of invoices July 6th $81.00 and August 5th, $1,224.00, with request that you favor us with remittance for same."

On September 26th, intervener wrote Chas. L. Weil & Co. :

"We will act immediately on receipt of your further advice, as we are very anxious to close the deal and make collection of the amount due us."

On September 30th, Mr. Bardol wrote the Glazier Stove Company as follows:

"Your account amounting to $1,326.34 is past due, These bills were sold on 30 days, and this time has long since expired. We must ask you, therefore, to let us have prompt remittance for the same."

On October 2, 1907, the F. Bissell Company wrote the Glazier Stove Company:

"While this matter is still pending, don't you think we are at least entitled to a portion of the amount due us. Usually in such cases about ten per cent. is withheld, to cover any defective work, omissions or changes necessary."

On the same day, in reply to this letter, the Glazier Stove Company said that they would not pay for the apparatus until it had been O. K.'d by Messrs. Weil & Co., and that had not yet been done. On or about October 22d, Mr. Walker, on behalf of the intervener, made an arrangement with Mr. Weil to allow $25 for the misplaced apparatus, and on November 7th Mr. Bardol wrote the Glazier Stove Company as follows:

"Will you kindly favor us with a reply to our Mr. Gray's letter of November 1st regarding account. This matter is very old, and as we feel entitled to the money we must urge you not to neglect the matter longer. A statement is herewith inclosed, showing balance $1,342.14 all averaging past due."

Under the facts disclosed by the foregoing correspondence, it is the claim of the intervening petitioner that the switchboard in question was personal property, that title

to it never passed to the Glazier Stove Company, that it was never accepted by the Glazier Stove Company, and that, therefore, the Glazier Stove Company having become insolvent and passed into the hands of a receiver, it (the intervener) now has the right to repossess itself of the board in question. It is quite apparent to us that this view of its rights in the premises only presented itself to the intervener *after* the Glazier Stove Company became insolvent. It is evident that the contract under which the board was manufactured and erected did not contemplate the retention of title in the vendor. The billing of the same to the Glazier Stove Company as goods sold and delivered and the reiterated demands on the part of the petitioner for the settlement of its account alleged to be "due and past due" clearly indicate that the petitioner believed that it had made a sale and delivery of personal property for which it was entitled to receive present compensation in full. It will further be noted that, although the Glazier Stove Company continually objected to a settlement of the account until the adjustment of the differences arising from the misplacement of the circuit breakers and switches by the petitioner, it never either by any act of its own or by Chas. L. Weil & Co., its engineers, indicated an intention to refuse to accept the board. On the contrary, the board was placed in commission on August 22d, very shortly after its erection was completed, and continued in service up to the date of the insolvency. Under the circumstances disclosed by the record, we are therefore of the opinion that the learned circuit judge reached a proper conclusion in the premises.

We do not discuss the question as to whether or not the switchboard when erected became a fixture, as our foregoing conclusions render such discussion unnecessary.

The decree is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.